# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Case No. 1:22-cr-09** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TROY ANDERSON** | ) | |

### MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

In the above-captioned matter, Defendant Troy Anderson ("Defendant" or "Anderson") is charged with one count of receiving and one count of possessing and accessing with intent to view material depicting the sexual exploitation of a minor. The Government alleges that the offending material was obtained from a laptop computer found at the Defendant's home.

Pending before the Court is the Defendant's motion to suppress all evidence seized from his laptop computer. ECF No. 64. The Government filed its initial response to the motion (ECF No. 73), and Defendant submitted his reply (ECF No. 78).

On July 29, 2024, the Court held an evidentiary hearing on the Defendant's motion. *See*, ECF No. 89 (scheduling); ECF No. 93 (transcript). All parties were represented by counsel. Tr., ECF No. 93, at 1.[1] The following individuals testified and were examined by both parties: (1) Corey Murphy, a Pennsylvania State Trooper and ATF task force officer who conducted the underlying criminal investigation, drafted the probable cause affidavit, and applied for the search warrant; (2) Robert Whyel, a Pennsylvania State Trooper who assisted in executing the search warrant at the Defendant's residence; (3) Fernando Hernandez, a digital forensic examiner who searched the Defendant's laptop; and (4) Agent Daniel Duffalo, a criminal investigator with the

---

[1] Citations to the hearing transcript ("Tr.") refer to the July 29, 2024 proceedings unless otherwise noted.

ATF who was present during the execution of the search of the Defendant's residence. *See* Tr. at 199.

The hearing focused on the warrant and the supporting affidavit of probable cause, effectively functioning as a *de facto Franks* hearing. Post-hearing briefing was ordered, and the Court has since received Defendant's post-hearing brief (ECF No. 99), the Government's post-hearing brief (ECF No. 100), and Defendant's response to the Government's brief (ECF No. 103).

The Court has considered all of the aforementioned filings, along with the testimony and evidence received at the July 29, 2024 suppression hearing. Based upon the credible testimony[2] and evidence in the record, the uncontested matters set forth in the parties' filings, and the analysis set forth below, the Court will deny the Defendant's Motion to Suppress.

## I.    BACKGROUND

The underlying investigation began when Anderson's ex-girlfriend (hereinafter "Person A") made reports about him to the Pennsylvania State Police ("PSP") in December 2020 and February 2021. ECF No. 64-2, at 13. On December 19, 2020, "Person A" reported that, after her breakup with Anderson, he repeatedly tried to contact her through phone calls, text messages, and social media, prompting her to block him on all platforms. *Id.* When unable to reach her directly,

---

[2] On a motion to suppress evidence, the trial court is the finder of fact and must determine the credibility of witnesses, weigh the evidence, and reach "any inferences, deductions and conclusions to be drawn from the evidence." *United States v. Cole*, 425 F. Supp. 3d 468, 473 (W.D. Pa. 2019). As the finder of fact, the Court "is free to accept or reject any or all of a witness's testimony." *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005) (citation omitted). The Court makes its credibility determinations by considering "numerous factors, including the witness's demeanor and manner while on the stand, the witness's ability to accurately recollect the matters at hand, the manner in which the witness may be affected by the outcome, the extent to which the witness's testimony is either supported or contradicted by other evidence and testimony in the case, and, ultimately, the extent to which it withstands a common sense test of reason and logic." *Id.* A witness' testimony is not to be judged more or less credible because the witness is a law enforcement officer. *Id.* at 569-70 (citations omitted).

The Court had an opportunity to hear the testimony and observe the demeanor of the four witnesses who appeared at the suppression hearing. Each witness generally demonstrated a good recollection of the events in question. Each one also appeared to be honest about the limits of his knowledge and/or recollection. Further, each witness generally testified consistent with other evidence in the case. Accordingly, the undersigned finds the testimony of Trooper Murphy, Trooper Whyel, Mr. Hernandez, and Agent Duffalo to be credible.

Anderson contacted a friend of hers through Facebook Messenger and sent derogatory messages about "Person A," along with a sexually explicit picture of her. *Id.* In one of the messages, Anderson stated, "I've seen 3 different trucks that have spent the night at her house in the last month." *Id.* Fearing for her safety, "Person A" installed security cameras at her home. *Id.*

On February 2, 2021, "Person A" reported that she had recently been contacted by several friends regarding Facebook messages they received from Anderson. ECF No. 64-2, at 13. These individuals did not know Anderson, and "Person A" believed that Anderson had found them through her Facebook account. *Id.* The messages contained derogatory information about "Person A" and included a photo of her with offensive statements on it. *Id.* One of the individuals had also received a sexually explicit video of "Person A" and Anderson together. "Person A" stated that Anderson had taken photos and video of her without her knowledge or consent. Anderson had also expressed to "Person A" that he wanted to get her fired from her job. To that end, he created a fake LinkedIn profile containing derogatory information about her. *Id.* Trooper Murphy was supplied with screenshots and text messages corroborating "Person A's" account. *Id.*

On February 16, 2021, Trooper Murphy submitted an affidavit of probable cause in support of a search warrant. ECF No. 64 at 1. The search warrant—which incorporated the affidavit—was signed the same day. ECF No. 64-2. A commonsense reading of the warrant supports the following: Based on the victim's report, Trooper Murphy swore—and the Magistrate agreed— that evidence of Stalking (18 Pa. C.S. § 2709.1) and Obscene and Other Sexual Materials and Performances (18 Pa. C.S. § 5903), occurring between December 18, 2020, and January 30, 2021, would likely be found on "cell phones, thumb drives, memory cards, external hard drives, computers, tablet computers, laptop computers, gaming systems, and cameras," located either on

Anderson's person or at his residence in Venango Township, Pennsylvania.[3]  On February 17, 2021, the search was executed, and police seized, among other things, a laptop computer believed to possess evidence of the aforementioned crimes. ECF No. 73-3.

Due to an administrative backlog caused by an influx of search warrants following the lifting of COVID-19 restrictions, the laptop was not examined until October 18, 2021— approximately eight months after its February 17, 2021, seizure. Tr. 28.  On that date, digital forensics examiner Fernando Hernandez discovered child sexual abuse material (CSAM) after opening the recycling bin — a file located within most computers which likely contains deleted files — and accessing the second file within it. Tr. 133. At that point, Hernandez halted the search and requested federal authorization to proceed further. Tr. 67.

Agents then obtained a federal search warrant for Anderson's laptop for the purpose of investigating crimes involving CSAM. *See* Govt. Ex. 6. The subsequent search allegedly revealed numerous items of CSAM which now serve as the basis for this criminal matter.

In the meantime, on October 27, 2021, Anderson pled guilty in state court to charges under 18 Pa. C.S. § 5903(a)(2) and 18 Pa. C.S. § 2709.1(a)(2). Section 5903(a)(2) prohibits the dissemination of, or possession with intent to disseminate, obscene materials to persons who are eighteen or older.  Section 2709.1(a)(2) criminalizes "stalking," defined as engaging in a course

---

[3] The reference to 18 Pa. C.S. 5903 is stated at the conclusion of the investigative summary (ECF No. 64-2, at 14), but it is not included in the face of the warrant (ECF No. 64-2, at 1). The warrant does, however, properly incorporate by reference the entirety of the affidavit in support of probable cause (ECF No. 64-2, at 3). *See, United States v. Tracey*, 597 F.3d 140, 146–47 (3d Cir. 2010) (holding that an affidavit may be used in determining the scope of a warrant that lacks particularity if the warrant is "accompanied by an affidavit that is incorporated by reference") (citing *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir. 1982)); *see also, Groh v. Ramirez*, 540 U.S. 551, 557–58 (2004) ("[M]ost Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.")

of conduct that demonstrates an intent to cause substantial emotional distress or fear of bodily injury. ECF No. 64-4.

## II.    DISCUSSION

Under the Fourth Amendment, the Government may not engage in "unreasonable searches and seizures[.]" U.S. Const. amend. IV.   To be considered "reasonable" under the Fourth Amendment, a seizure must usually be effectuated pursuant to a warrant issued upon a showing of probable cause. *United States v. Amos*, 88 F.4th 446, 451 (3d Cir. 2023) (quotation marks and citation omitted).   "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

Here, Anderson challenges the search warrant and subsequent forensic examination of his laptop, raising several claims.   First, he maintains that his guilty plea in state court does not preclude him from challenging the search warrant. ECF No. 78. Second, he contends that the affidavit supporting the warrant contained material omissions that undermined probable cause. ECF No. 64 at 2. Third, Anderson asserts that the warrant was impermissibly general and/or overbroad, granting law enforcement unrestrained discretion to search all files on his electronic devices without particularity or a clear nexus to the alleged stalking offense. *Id.* at 3. Further, he argues that the forensic examiner conducted an indiscriminate, unrestrained search of the laptop, failing to limit the search to relevant files, time periods, or identifiers related to the alleged offense. ECF No. 99 at 1.   Fourth, Anderson claims that the eight-month delay between the seizure of his laptop and its forensic examination rendered the search constitutionally invalid. ECF No. 64 at 25. Finally, he maintains that the good faith exception does not apply, as no reasonable officer could have believed the warrant justified the search as it was conducted. *Id.* at 22. Based on these alleged constitutional violations, Anderson seeks suppression of the evidence obtained from his laptop.

The Government opposes Anderson's motion by first arguing that his guilty plea in state court waived his ability to assert Fourth Amendment claims related to the evidence obtained from the challenged search and seizure. ECF No. 73 at 11. The Government also contends that the warrant was valid, sufficiently particularized, and not overbroad, as it properly identified the devices to be searched and the categories of evidence relevant to the stalking and obscenity investigation. *Id.* at 18. The Government further asserts that Anderson has failed to show that material omissions or misstatements in the affidavit negated probable cause. *Id.* at 30. Regarding the forensic examination, the Government maintains that its search methodology does not undermine the validity of the search. ECF No. 100 at 4. It also contends that the delay between seizure and examination does not warrant suppression, as the Fourth Amendment does not impose strict time limits on searches of electronically stored data, and Anderson has not demonstrated any prejudice from the delay. ECF No. 73 at 23, 29. Finally, the Government asserts, that even if defects existed in the warrant, the good faith exception applies, as law enforcement relied on a warrant issued by a neutral magistrate, and there is no evidence of deliberate, reckless, or systemic misconduct. ECF No. 100 at 9. Based on these arguments, the Government contends that Anderson's motion to suppress should be denied.

### A. A State Court Guilty Plea Does Not Preclude A Federal Court's Independent Review of A Search's Constitutionality.

On October 27, 2021, Anderson voluntarily and unconditionally pled guilty to state misdemeanor charges arising from his conduct toward the victim. ECF No. 73-4. Days earlier, on October 18, 2021, Hernandez searched Anderson's laptop and discovered evidence of child sexual abuse material. ECF No. 64 at 1. Anderson now challenges the search of this evidence, alleging a Fourth Amendment violation as it relates to the instant federal case.

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Porter*, 933 F.3d 226, 229 (3d Cir. 2019) ("an unconditional valid guilty plea results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment.") (internal citations omitted).

However, this principle does not automatically extend to challenges raised in subsequent prosecutions.  Indeed, precedent suggests that, because state and federal prosecutions are entirely separate, a federal court may evaluate a motion to suppress on federal grounds, independent of what occurred in a prior state court proceeding. *See Elkins v. United States*, 364 U.S. 206, 223–24 (1960)("In determining  whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out."); *United States v. Bedford*, 519 F.2d 650, 653 (3d Cir. 1975)("When a warrant's validity is being examined for federal prosecutorial  purposes and the resulting search is 'state' in character, the warrant need only satisfy  federal constitutional requirements.") (cleaned up); *United States v. Wilson*, 413 F.3d 382, 390 n. 10 (3d Cir. 2005) (prior rulings in a state court suppression hearing have no bearing on subsequent federal prosecution; court finding that neither double jeopardy nor collateral estoppel apply); *United States v. Robertson*, 2020 WL 3574368, at *6 (W.D. Pa. June 29, 2020) (conducting an "independent assessment" after the same evidence was suppressed in state court.)

Here, the Government's argument that Anderson's guilty plea in state court should bar his Fourth Amendment challenge in federal court is not persuasive.  Its reliance on *Porter* is unavailing

because—as Anderson points out—the rationale in *Porter* does not support the Government's position. *Porter* addressed a situation where a defendant entered an unconditional guilty plea to federal charges and then later attempted to challenge the constitutionality of the search on direct appeal in the same case. 933 F.3d at 229. The gravamen of the court's ruling was that, even if the defendant prevailed on his suppression motion at the appellate stage, his conviction could not be overturned because his conviction was based on his admission in court and not the evidence obtained from the search. *Id.* Here, Anderson's suppression motion relates specifically to this federal prosecution wherein, to date, no guilty plea has been entered. Anderson's prior guilty plea in state court does not waive his right to challenge the legality of the search that resulted in this prosecution and, thus, the Court may independently evaluate the merits of his suppression motion in this matter.

### B. *Franks v. Delaware* and the Warrant Affidavit: Defendant Fails to Demonstrate Material Misrepresentation or Omission Affecting Probable Cause.

The Fourth Amendment shields against governmental intrusion in the guise of "unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The Supreme Court in *Franks* recognized that this constitutional requirement would be "reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." *Franks v. Delaware*, 438 U.S. 154, 168 (1978). When the magistrate judge in issuing a warrant is misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth, suppression is an appropriate remedy. *United States v. Leon*, 468 U.S. 897, 923 (1984).

However, an affidavit is presumed to be valid; therefore, a defendant must make a "substantial preliminary showing" before the court will hear evidence challenging the affiant's veracity or commitment to unveiling and reporting the truth. *Franks*, 438 U.S. at 171. The defendant must show preliminarily that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and that the allegedly false statement is necessary to the finding of probable cause. *See*, *id.* at 155-156; *see also Sherwood v. Mulvihill* (further refining "necessary to the finding of probable cause" to mean "statements or omissions are *material*… to the finding of probable cause.") (emphasis supplied.) The requirement of a substantial preliminary showing is meant "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." *Franks,* 438 U.S. at 170.

As previously stated, the Court has already held an evidentiary hearing concerning the warrant affidavit in this matter; as a result, the suppression hearing was, in essence, a *de facto Franks* hearing. Given the extensive testimony and cross-examination of witnesses, the Court need not assess whether the Defendant has made the preliminary facial showing required for a *Franks* hearing and will instead proceed directly to evaluating the sufficiency of the warrant affidavit itself.

Under these circumstances, suppression remains an appropriate remedy only if Defendant has proved by a preponderance of the evidence: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).

i.    Reckless Disregard for the Truth and Materiality of the Omissions in the Affidavit of Probable Cause

Defendant argues that Trooper Murphy omitted material facts from the affidavit of probable cause. ECF No. 64 at 2.  "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know…." *Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (internal citations omitted). When assessing omissions in the context of a *Franks* analysis, a court must remove the "falsehood created by an omission by supplying the omitted information to the original affidavit." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). The supplied information must be (1) known to the officer and (2) material to the existence of probable cause. *Dempsey v. Bucknell Univ.* 834 F. 3d 457, 471 (2016). To determine materiality, the court must insert the missing information and assess whether the "corrected" warrant affidavit would still establish probable cause. *Yusuf*, at 384. Probable cause exists if, based on the totality of circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Here, Anderson alleges that Trooper Murphy improperly excluded the following facts from his warrant application:

(1) That "Person A" had lodged a prior criminal complaint against Anderson in February 2020, which she withdrew the following month;

(2) That "Person A" was dishonest in her prior complaint regarding the nature of her relationship with Anderson and another person;

(3) That Anderson and "Person A" lived in close proximity, and the route to Anderson's home necessarily passed by "Person A's" house;

(4) That "Person A" had never made any statements to law enforcement indicating that Anderson used a laptop to transmit images or messages;

Having fully considered Anderson's arguments, the Court finds that these omissions do not impair the constitutional validity of the warrant, whether viewed individually or collectively.

As to the first two omissions, the record reflects that "Person A" reported to PSP Trooper Loucks in February 2020 that Anderson had sent three photographs of her to a third party without her consent. Def. Ex. D (under seal). Trooper Loucks stated in his report that "Person A" was initially untruthful about the nature of her relationship with Anderson and the third party, but once he confronted her with evidence that was inconsistent with her representations, she told him the truth about those relationships. *Id.* Through his investigation, Trooper Loucks confirmed "Person A's" allegation that three photographs had been sent to the third party, one of which depicted "Person A" in a partially nude state. Nevertheless, in March 2020, "Person A" informed Trooper Loucks that she did not wish to pursue the case any further and, to that end, she signed a waiver of prosecution form.

The Court is not persuaded that the foregoing facts are something that a reviewing magistrate judge would find important in determining whether Trooper Murphy's February 2021 search warrant application was supported by probable cause. Anderson posits that the information is material because it undermines "Person A's" veracity, and Trooper Murphy's affidavit was based solely on the allegations of "Person A" without the benefit of any additional investigation or corroboration. But this assertion is incorrect. Instead, the record shows that Trooper Murphy interviewed five different individuals who confirmed that they were messaged by Anderson, just as "Person A" had alleged. In addition, Trooper Murphy viewed text messages, screenshots, and social media proofs that were corroborative of "Person A's" allegations. Thus, even if the information about "Person A's" February 2020 complaint were included in Trooper Murphy's affidavit, there would be no obvious reason for Trooper Murphy or a reviewing magistrate judge to doubt the veracity of "Person A's" subsequent allegations, as they were supported by corroborating evidence.

Further, the fact that "Person A" withdrew her prior complaint against Anderson does not necessarily undermine the credibility of her subsequent complaint to the PSP. The evidence does not reflect that "Person A" recanted her prior allegations against Anderson; instead, she merely chose not to proceed with the prosecution of her first complaint. "Person A" could have made this decision for any number of reasons and, as Trooper Murphy testified, it is not an uncommon occurrence in the context of an intimate relationship. Tr. at 20-23.

"Person A's" initial untruthfulness to Trooper Loucks also lacks significance in the context of this case. The untruthful statements concerned the collateral issue of whether "Person A" was romantically involved with Anderson and/or a third party during times relevant to her February 2020 complaint. Her central allegation -- that Anderson had sent photos of her to a third party without her consent -- were verified by Trooper Loucks through his interview of the third party and his acquisition of digital evidence. Viewed in proper context, the Court cannot say that Trooper Murphy acted with reckless disregard for the truth in omitting this background information about "Person A's" prior criminal complaint.

The third omission concerns the fact that Anderson lived in close proximity to "Person A" and passed her house on his way home. Anderson contends that this information was important because it calls into question Trooper Murphy's assertion that he (Anderson) was "watching the Victim's residence closely." According to Anderson, he could have observed the cars in "Person A's" driveway while "merely driving to his own home." ECF No. 64 at 24; ECF No. 99 at 8.

The record is not clear about whether Trooper Murphy was possessed of this knowledge at the time he sought the search warrant. On direct examination, Trooper Murphy could not specifically remember whether he knew where Anderson lived at the time he applied for the warrant. Tr. at 25. On cross-examination, he acknowledged learning from his interview of

Anderson, after the search warrant had already been executed, that Anderson and "Person A" lived "fairly close." Tr. at 59. In any event, however, the location of Anderson's home relative to "Person A's" home is not information that a reviewing magistrate judge would necessarily want to know in assessing whether Trooper Murphy's warrant was supported by probable cause. The proximity of the two homes is a simple fact of geography and does not alter the fact that Anderson may have engaged in the actions described in the affidavit -- specifically, closely watching "Person A's" residence. That Anderson allegedly identified three dissimilar trucks that were parked at Person A's home over a month-long period and then felt the need to share that information with "Person A's" friend, along with derogatory information and a sexually explicit photo of her, lends support to "Person A's" allegations of harassing conduct. *See*, ECF No. 64-2, at 13. Even if Anderson made his observations while driving home, this added fact does not significantly detract from the overall aberrant and menacing nature of his conduct.

The fourth omission pertains to the fact that "Person A" did not make any statements to law enforcement indicating that Anderson had used a laptop to transmit images or messages. Anderson objects to Trooper Murphy leaving this information out of the affidavit, and he asserts that this omission is "glaring, especially considering that the alleged victim specifically told Trooper Murphy that they believed a cell phone was used to commit the alleged offense." ECF No. 99 at 8 and n.22 (citing Tr. at 46:23-47:8).

Anderson's argument misses the mark in that the portions of the record he cites pertain only to statements that "Person A" reportedly made to Trooper Loucks. Specifically, "Person A" told Trooper Loucks she believed Anderson had used his cell phone in connection with the conduct that led to her original complaint. *See* Tr. at 46-47. The record does not reflect that "Person A" specifically reported Anderson's use of a cell phone in connection with her later complaints in

December 2020 and February 2021. At most, the record establishes that "Person A" never specifically claimed that Anderson used a laptop to commit those offenses. Tr. at 48.

Regardless, the Court is not persuaded that "any reasonable person" would view this type of information as something a reviewing magistrate judge would want to know in making a probable cause determination. The types of electronic activities and communications alleged in Trooper Murphy's affidavit could be performed via cellphone or computer, and there is nothing in the record to suggest that "Person A" was in a position to know what device Anderson utilized or didn't utilize in connection with that specific conduct. Additionally, and as Trooper Murphy testified, electronic data such as messages, photos, or videos can be stored on a laptop even when they originate from a cellphone. Tr. at 47.

In light of the above, the Court finds that the Defendant has failed to prove by a preponderance of the evidence that Trooper Murphy knowingly and intentionally, or with reckless disregard for the truth, omitted information from his affidavit that was material to a finding of probable cause. Indeed, "[f]or practical reasons, courts simply cannot 'demand that police officers relate the entire history of events leading up to a warrant application.'" *Wilson*, 212 F.3d at 787 (internal citations omitted.) The affidavit, which was based on substantial corroborating evidence such as the victim's text messages, screenshots, and the detailed account of Anderson's actions, sufficiently established a fair probability that evidence of a crime would be found. Because the Defendant has not met his burden of proving that the warrant was issued on the basis of a deliberately or recklessly false affidavit, and the motion to exclude the fruits of the search on these grounds must be denied.

### C. The Warrant Satisfied the Fourth Amendment's Particularity Requirement and Was Neither General Nor Overbroad.

The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched, and the persons or things to be seized." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  As the Court in *Garrison* explained:

> The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found."

*Garrison*, 480 U.S. at 84–85 (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)).

Defendant contends that the warrant in this case was both a general warrant and, in the alternative, that the warrant was overbroad. ECF No 65 at 18. While these two issues are related, "[t]here is a legal distinction between a general warrant, which is invalid because it vests the 'executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's] papers in search of criminal evidence,' and an overly broad warrant, which 'describe[s] in both specific and inclusive general terms what is to be seized,' but 'authorizes the seizure of items as to which there is no probable cause.'" *Yusuf*, 461 F.3d at 393 n. 19 (quoting *U.S. v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 149 (3d Cir. 2002)); *see also United States v. Christine,* 687 F.2d 749, 753 (3d Cir. 1982); *United States v. Wecht*, 619 F. Supp. 2d 213, 232 (W.D. Pa. 2009) (detailing the distinction between an overly broad warrant and a general warrant.)[4]

---

[4] "These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general 'rummaging' banned by the fourth amendment. ... A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation. The officers

"An overly broad warrant…can be cured by redaction, that is, by "striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment." *Ninety-Two Thousand,* 307 F.3d at 149. "Evidence seized pursuant to an overly broad warrant need not be suppressed if the good faith exception applies." *Id.* In contrast, "all evidence seized pursuant to that general warrant must be suppressed" *United States v. Fleet Mgmt. Ltd.*, 521 F. Supp. 2d 436, 441 (E.D. Pa. 2007); *see United Wecht*, at 228.

i.    The Warrant Was Not General

Anderson argues that his motion to suppress should have been granted because the warrant was an unconstitutional general warrant. We disagree.

It is well established that a warrant must "particularly describe the place to be searched and the persons or things to be seized" U.S. Const. amend. IV. When it does not, "all evidence seized pursuant to [the] general warrant must be suppressed." *Christine*, at 758. A warrant is not unconstitutionally general "unless it can be said to 'vest the executing officer with unbridled discretion to conduct an exploratory rummaging ... in search of criminal evidence.'" *United States v. Leveto*, 540 F.3d 200, 211 (3d Cir. 2008) (quoting *Christine*, at 753).

Anderson argues that the warrant failed to impose meaningful limits on what and where officers could search by authorizing the examination of "all electronic devices for any and all data," leaving officers with unfettered discretion to determine what to seize. ECF No. 64 at 11-14. In support of his argument, Anderson relies on *United States v. Fleet Management*, 521 F. Supp. 2d 436 (E.D. Pa. 2007), wherein the court concluded that a warrant authorizing the seizure of "any

---

executing such a warrant will not rummage, but will 'cart away all documents.'" *United States v. Wecht*, 619 F. Supp. 2d 213, 232 (W.D. Pa. 2009) (citations omitted).

and all data" from several computers was an invalid general warrant, as it placed no limitations on the data to be seized. *Id.* at 443. He also points to testimony of forensic examiner Fernando Hernandez, who performed the initial search of his laptop. According to Anderson, Hernandez' description of his forensic methodology further demonstrates that the warrant placed no meaningful boundaries around the search of the laptop.

Anderson's position is not well-taken. As an initial matter, the Court agrees with the Government that any determination about whether the warrant is sufficiently particularized must be based on the language of the warrant itself, and not the views or actions of law enforcement agents. *See United States v. Stabile*, 633 F.3d 219, 240 (3d Cir. 2011) (noting that "an investigator's subjective intent is not relevant to whether a search falls within the scope of a search warrant"). Thus, neither Examiner Hernandez' personal interpretation of the warrant nor his conduct in executing the warrant is of any legal moment for purposes of determining whether the warrant was invalid on its face.

Second, Anderson fails to account for the fact that the affidavit was appended to the search warrant and incorporated into it by reference. The affidavit specifies that "the purpose of this search warrant would be to obtain any and all data (pictures, videos, text messages, etc.) pertaining to the Victim before ANDERSON exposes it any further . . . ." ECF No, 73-3 at 13. This language provides necessary context and specificity, ensuring that the search was not an indiscriminate rummaging but rather focused on identifying evidence related to the alleged stalking and dissemination of the victim's sexually explicit photos. The warrant further ties the search for those pictures, videos and messages to a list of digital devices believed to contain evidence of the alleged offenses. See *id.* at 1 (authorizing the search of "[e]lectronic devices listed in Attachment A, included but not limited to, cell phones, thumb drives, memory cards, external hard drives, laptop

computers, gaming systems and cameras" belonging to the Defendant). ECF No. 73-3 at 1. Thus, the warrant and attached affidavit limit the search of Anderson's devices by reference to data that pertained to the victim ("Person A") in relation to the two listed crimes, making it distinguishable from the warrant that was deemed invalid in *Fleet Management*.

Given the broad scope of data typically involved in digital harassment cases, the search warrant was appropriately tailored to locate evidence of the specific criminal conduct under investigation. *Yusuf*, at 395 ("[T]he breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate.") Indeed, the digital harassment, creation of fake LinkedIn profiles, dissemination, storage and capture of sexually explicit photos are all actions that are digital in nature and may by located on the devices specifically named in the warrant. Where exactly the evidence might exist is purely based on an individual's personal habit or preference. *See, United States v. Stabile*, 633 F.3d at 237 ("[I]t is clear that because criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity, a broad, expansive search of the hard drive may be required.") The search was thus meaningfully narrowed in context.

Finally, Anderson's reliance on general warrant precedent is misplaced. A warrant must be read as a whole. *United States v. Tracey*, 597 F.3d 140 at 154; *Andresen v. Maryland*, 427 U.S. 463, 480–81 (1976) (holding that a broad phrase in a warrant did not render it general when context clarified its meaning). Further, the affidavit should be interpreted in a "common sense, nontechnical manner." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011). Thus, the, the argument that because the warrant stated that it sought "any and all data" means that is was *per se* broad fails consider the relevant caselaw regarding how a warrant must be interpreted. The

warrant was limited by its connection to the victim and the specific crimes under investigation, making it distinguishable from warrants struck down as general. *See, e.g.*, *Tracey*, 597 F.3d 140, 154 (3d Cir. 2010) ("The warrant thus 'describ [ed] in ... inclusive generic terms what is to be seized.' It did not vest the executing officers with 'unbridled discretion' to search for and seize whatever they wished. It was indubitably broad, but it was not general." (internal citations omitted))

Accordingly, because the warrant in this case sufficiently described the items to be seized and limited the scope of the search to evidence relevant to the alleged crimes, it was not an unconstitutional general warrant.

ii.    <u>The Warrant Was Not Overbroad.</u>

Anderson next argues that the warrant was overbroad because it authorized the seizure of *all* of his electronic devices, including his laptop computer, whereas the affidavit was specifically tailored to cell phone searches.  We disagree.

To determine whether a warrant was overbroad, we must compare the scope of search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit. *In re Impounded Case (Law Firm)*, 840 F.2d 196, 200 (3d Cir.1988). In doing so, "the phrases in a search warrant must be read in context and not in isolation." *United States v. Conley*, 4 F.3d 1200, 1208 (3d Cir.1993). When a warrant is challenged as overbroad, the issue is whether there exists probable cause to support the breadth of the search that was authorized. Probable cause is a "practical, nontechnical concept." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). It cannot be "reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.  As the Supreme Court has observed, a "commonsense, practical" review of the "totality of the circumstances" is necessary to determine whether "in a particular factual context the probability of criminal conduct has been

established." *Id.* at 230; *United States v. Leveto*, 343 F. Supp. 2d 434, 448 (W.D. Pa. 2004), aff'd, 540 F.3d 200 (3d Cir. 2008).

As set forth in the affidavit, Trooper Murphy had credible information that Anderson had continually tried to contact "Person A" via phone calls, text messages, and social media. After she blocked him from further contact, Anderson sent derogatory messages and sexually explicit images and video of "Person A" to third parties via Facebook messenger. Anderson also created a fake "Linkedin" account with "Person A's" information in an apparent attempt to get her fired. This information was sufficient to establish the "probability of criminal conduct" that could have been perpetrated through any number of electronic devices, including (among other things) a cell phone or a laptop computer. And, as the Government observes, the affidavit explains the interplay between cell phones and other electronic devices which can be used for, among other things, storage of electronic data. See ECF No. 73-3 at ¶¶9, 10, 23.

Thus, the warrant properly sought "any and all data" tied to Anderson's allegedly unlawful conduct toward "Person A," including electronic communications and explicit images disseminated via social media, text messages, and the fake LinkedIn profile. And given the nature of the offenses at issue, there was a "fair probability" that evidence would be found on any of his electronic devices. *Gates*, 462 U.S. 213, 238 (1983). Consequently, the warrant's scope -- encompassing devices like cell phones and hard drives -- was justified by the inherent diffuseness of digital evidence. *See, Stabile*, at, 237; *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) ("A sufficient chance of finding some needles in the computer haystack was established by the probable cause showing in the warrant application."); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (upholding a blanket seizure of a defendant's computer system where probable cause existed to believe it contained digital contraband).

Anderson argues that the manner in which Examiner Hernandez conducted an "unbridled general search" of his laptop "confirms that the warrant is overly broad and authorized the exact kind of rummaging through [his] devices that the Fourth Amendment's protections are intended to prohibit." ECF No. 99 at 7. This argument fatally conflates breadth with overbreadth. Although the warrant authorized the review of voluminous data, the search was limited to evidence of stalking and dissemination of obscene material -- it did not permit a "general rummaging." *Christine*, at 753 (3d Cir. 1982). Moreover, the Fourth Amendment also does not require that the Government employ "a particularized computer search strategy." *Stabile*, 633 F.3d at 238 (quoting *United States v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005)).

Finally, even if the warrant were found to be overbroad, suppression would still not be warranted if the good faith exception applies. As discussed further below, it was objectively reasonable for the executing officers to believe that the warrant properly authorized a search for and seizure of the categories of digital evidence at issue. Accordingly, because the warrant was supported by probable cause, appropriately targeted evidence of the crimes in question, and did not require a particularized search protocol, the Court concludes that it was not unconstitutionally overbroad.

### D. The Plain View Doctrine Applies to the CSAM Located on Anderson's Computer.

Anderson alternatively argues that the warrant only authorized the search and seizure of evidence related to stalking. According to Anderson, evidence regarding CSAM must be suppressed because it fell outside the scope of the warrant.

Assuming *arguendo* that the warrant's scope limited the officer's search to only stalking-related evidence, the plain view doctrine would still render the CSAM admissible. In *Stabile*, the Third Circuit held that "the plain view doctrine applies to seizures of evidence during searches of

21

computer files, but the exact confines of the doctrine will vary from case to case in a common-sense, fact-intensive manner." 633 F.3d at 240-41. Under the plain view doctrine, evidence obtained in violation of the Fourth Amendment need not be suppressed so long as three requirements are met: "First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the incriminating character of the evidence must be 'immediately apparent.' Third, the officer must have a 'lawful right to access the object itself.'" *Id.* at 241.

Here, the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Anderson argues that the officer should have used more refined search methodologies to locate only evidence relevant to the stalking offense, specifically avoiding areas like the recycle bin of Anderson's computer. ECF No. 78 at 7-8. However, this argument misapprehends the nature of digital searches. As previously discussed, Courts recognize that searches of computers often reveal a large volume of files simply due to the way data is stored and accessed on electronic devices. *See also, United States v. Payton*, 573 F.3d 859, 861–62 (9th Cir. 2009); *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009). The warrant explicitly authorized a search for photographs associated with Anderson's stalking charge. The officer, in conducting that search, necessarily had to examine image files. When doing so, he encountered an image of CSAM in a location that was within the scope of his lawful search.

Second, the incriminating character of the evidence was immediately apparent. Upon clicking on the image, the officer immediately recognized its illegal nature and ceased further exploration. *See United States v. Highbarger*, 380 F. App'x 127, 131 (3d Cir. 2010)("Once Agent Hodge had opened the graphic file that contained the image of child pornography, he was entitled to seize that image under the plain view doctrine.")

Third, the officer had a lawful right to access both the digital device and the files within it. The search warrant explicitly permitted the forensic examination of Anderson's laptop to locate photographic evidence related to the stalking allegations. The officer's access to the image was incidental to a valid search under the warrant, and upon discovering apparent contraband, the appropriate course of action was to seek a second warrant—which the officers did. Courts have endorsed this approach as the recommended procedure in similar circumstances. *See, e.g., United States v. Carey*, 172 F.3d 1268, 1276 (10th Cir. 1999).

Accordingly, because the discovery of the CSAM on Anderson's device satisfied all three prongs of the plain view doctrine, suppression of the evidence is not warranted on these grounds.

### E. The Eight-Month Delay Between the Seizure and Search of Anderson's Laptop Did Not Deprive Anderson of His Constitutional Rights and was Reasonable Under the Circumstances.

Anderson argues that the eight-month delay between the seizure of his laptop and its forensic examination constituted an unreasonable delay warranting suppression of the evidence. ECF No. 64 at 18. He further contends that probable cause was negated by new information that came to light after the laptop was seized, but before it was examined. *Id.* at 26-27. In particular, Anderson points to evidence indicating that "Person A" had previously consented to him possessing certain sexually explicit photos of her. Anderson also points to "Person A's" testimony at his March 2, 2021 state court preliminary hearing that she was not afraid of him. *Id.* Anderson contends that law enforcement had a duty to reapply for a search warrant in light of this new information and that their failure to do so, coupled with the lengthy delay in executing the forensic search, violated his Fourth Amendment rights. *Id.*

i.    The Delay Did Not Render the Evidence Stale

When evaluating whether a delay in executing a search warrant results in stale evidence, courts assess "(1) the nature of the crime; and (2) the type of evidence sought by the warrant." *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002).

Here, the nature of the crime—stalking and the unlawful distribution of sexually explicit materials—suggests that the digital evidence sought was not time-sensitive in a way that would render it stale. Digital evidence, by its very nature, is inherently durable unlike perishable or organic contraband. Indeed such electronic communications persist on devices indefinitely. Courts have routinely held that probable cause does not dissipate simply because digital evidence remains on a device for an extended period. *United States v. Vosburgh*, 602 F.3d 512, 529 (3d Cir. 2010); *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005) ("Courts have permitted some delay in the execution of search warrants involving computers because of the complexity of the search."). Given that law enforcement sought evidence of stalking and the unauthorized dissemination of explicit images—both of which involved electronic communications that tend to persist on digital devices—the eight-month delay does not, on its own, make the evidence stale.

ii.    The New Information Learned Did Not Undermine Probable Cause

Anderson's argument that post-warrant developments undermined probable cause fails for a fundamental reason -- namely, only *material* new information can invalidate a warrant. O*ponski v. Michaels*, 1995 WL 732811, at *3 (E.D. Pa. Dec. 8, 1995). In this case, the new information did not meet that standard.

First, "Person A's" subjective feelings toward Anderson as of March 2, 2021 are irrelevant to the crimes in question, because neither stalking nor dissemination of obscene materials is defined in terms of the victim's actual, subjective mental state. "Stalking," for example, is defined

in terms of the *perpetrator's* conduct and communications, which must demonstrate or communicate the *perpetrator's* intent to place another person "in reasonable fear of bodily injury" or to cause them "substantial emotional distress. *See* 18 Pa. C.S.A. §2709.1(a)(2). The crime of "Obscene and Other Sexual Materials and Performances" contains no reference at all to the victim's mental state. *See* 18 Pa. C.S.A. §5903. In any event, "Person A's" later emotional state as of March 2, 2021 -- after Anderson had been arrested -- does not retroactively negate her initial well-documented fear that justified police intervention.

Second, the fact that "Person A" may have consented to Anderson's possession of certain sexually explicit photos of her does not mean that she consented to him possessing *all* of the images in question. Nor can her consent for Anderson to possess certain images reasonably be construed as consent for him to *disseminate* all of the images to third parties. Thus, the information that was uncovered following the officers' seizure of the laptop did not negate probable cause for the subsequent search of the laptop's digital contents, nor did it obligate the officers to acquire a new search warrant.

    iii.    <u>The State vs. Federal Nature of the Search is Immaterial, and the Delay was Reasonable Under the Circumstances</u>

Both Anderson and the Government initially disputed whether the search was governed by Rule 41 of the Federal Rules of Criminal Procedure or the Constitution. However, at the post-hearing stage, both parties abandoned this issue, presumably because it is not dispositive.

Assuming the search was conducted under federal law, it did not violate Rule 41(e)(2)(B), because the rule explicitly permits off-site review of digital evidence without imposing a fixed deadline, as long as the delay is reasonable. *See* Fed.R.Crim.P. 41, Advisory Committee Notes, 2009 Amendments. Rule 41(e)(2)(B) expressly contemplates extended timelines for forensic examinations due to device complexity, encryption, and lab backlogs, reflecting the Advisory

Committee's rejection of rigid timelines for digital searches. *Id.* ("there is no basis for a 'one size fits all' presumptive period for the forensic review of seized electronic devices."). Here, the Government has offered a reasonable explanation for the delay—law enforcement faced significant backlogs in forensic examinations due to resource constraints and the volume of digital evidence being processed as a result of a COVID-19 based rush.

Assuming the search was conducted under state law, it did not violate the Fourth Amendment, which imposes no rigid time limit and requires only that the search be reasonable. *Carpenter v. United States*, 585 U.S. 296, 316 (2018) (the "ultimate measure of the constitutionality of a governmental search is reasonableness") (internal citations omitted). As previously discussed, the search was reasonable under the circumstances.

In conclusion, the eight-month delay in conducting the forensic search of Anderson's laptop was reasonable given the complexities of digital evidence processing and the backlog of forensic examinations. The nature of the evidence sought—digital communications and images— was inherently durable and did not become stale after the laptop was secured and preserved in evidence. Moreover, Anderson's argument that new information negated probable cause is unpersuasive, as neither the victim's prior consent to certain images nor her later statement at a preliminary hearing undermined the core allegations that justified the warrant. Finally, whether the search is viewed under state or federal law, the test remains reasonableness, which is satisfied here. Accordingly, Anderson's argument for suppression based on undue delay is without merit.

### F. The Good Faith Exception Applies

The Government argues that even if the warrant were found to be defective in some way, suppression is not warranted because the officers acted in objectively reasonable reliance on the

reviewing judge's issuance of the warrant, and therefore, the good faith exception applies. *United States v. Leon*, 468 U.S. 897, 922 (1984). The Court agrees.

The good faith exception to the exclusionary rule applies when law enforcement officers conduct a search in reasonable reliance on a search warrant issued by a neutral and detached magistrate. *Id.* at 919. The relevant inquiry is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999). The purpose of excluding evidence seized through unconstitutional searches is to deter police misconduct, but where officers act in reasonable reliance on a warrant, suppression has little deterrent value. *Leon,* 468 U.S. at 919. Nevertheless, the good faith exception does not apply in four situations:

(1) Where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit.

(2) Where the magistrate abandoned their judicial role and failed to perform a neutral and detached function.

(3) Where the warrant was based on an affidavit so lacking in indicia of probable cause that belief in its validity was entirely unreasonable.

(4) Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Zimmerman*, 277 F.3d 426, 436–37 (3d Cir. 2002).

i.    <u>Good Faith Applies</u>

None of the four circumstances that would render the good faith exception inapplicable are present in this case. First, Anderson has not shown that the affidavit supporting the warrant contained deliberate or reckless falsehoods, as previously discussed. The affidavit set forth a detailed narrative of Anderson's alleged stalking and digital harassment, which the reviewing judge found sufficient to establish probable cause. Even if Anderson disputes certain factual

assertions—such as whether the victim feared for her safety or had previously consented to Anderson's possession of certain images—the affidavit as presented was not "deliberately or recklessly false." Moreover, the alleged omissions were not material to a finding of probable cause.

Second, there is no indication that the reviewing judge abandoned his neutral and detached role, nor does Anderson allege that this occurred.

Third, the warrant was not based on an affidavit so lacking in probable cause as to render reliance on it unreasonable. Here, the affidavit outlined the crimes in question, provided a detailed description of the evidence compiled by Trooper Murphy, and included a sworn statement by Trooper Murphy attesting to the truth of the averments within. "When faced with a challenge to a magistrate's probable cause determination, a reviewing court must remember that its role is limited. It is not to conduct a de novo review. Rather, it simply ensures that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Jones,* 994 F.2d 1051, 1055 (3d Cir. 1993). In this case, the Court is satisfied that the reviewing judge had a more-than-substantial basis for concluding that probable cause existed.

Fourth, the warrant was not so facially deficient that officers should have immediately recognized it as invalid. A warrant is facially deficient if it "fails to particularize the place to be searched or the things to be seized." *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001). As previously analyzed, Anderson's argument on this ground fails.

ii.    <u>The Officers Actions During the Search Indicate Good Faith</u>

Anderson contends that the forensic examiner had no restrictions on his search and that this broad discretion rendered the warrant invalid. However, as courts have repeatedly held, "search methods must be 'tailored to meet allowed ends,'" but "the search warrant itself need not

'contain a particularized computer search strategy.'" *Stabile*, at, 238. In digital evidence cases, courts recognize that investigators may need to examine a broad range of files to locate relevant evidence, particularly when suspects conceal or mislabel incriminating data. *Id.*

Moreover, law enforcement officers in this case did not engage in a "search first, justify later" approach condemned in *United States v. Ritter*, 416 F.3d 256, 278 (3d Cir. 2005). Instead, they sought and obtained a valid search warrant from a state court judge, executed the search as authorized, and when CSAM was discovered, they stopped and obtained a second warrant. Courts have found that seeking an additional warrant before expanding the scope of a search demonstrates good faith. *See, United States v. Carey*, 172 F.3d 1268, 1276 (10th Cir. 1999).

iii.    The Officers Had No Reason to Believe the Warrant Was Invalid

The good faith exception requires that officers have "a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law and all the known facts." *United States v. Reilly*, 76 F.3d 1271, 1273 (2d Cir. 1996). Here, the officers conducted a thorough investigation, presented the evidence to a neutral judicial officer, and obtained a warrant that a reasonable officer would not view as patently defective. Even if the warrant could have been more specific, the errors were not so egregious as to make reliance on it unreasonable.

As the Third Circuit has emphasized, "the mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith." *United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir. 2001). In this case, the warrant contained elements that would signal to an executing officer that it was valid, and there is no indication that law enforcement engaged in reckless or unlawful conduct.

Even if the warrant was flawed in some respect, suppression is not warranted because the officers acted in objectively reasonable reliance on its issuance. Again, the warrant was not based

on deliberate or reckless falsehoods, the reviewing judge did not abandon his judicial role, the affidavit was not so lacking in probable cause as to make reliance on it unreasonable, and the warrant was not facially deficient. Given these factors, the good faith exception applies, and suppression of the evidence is not justified.

### III.     CONCLUSION

For the reasons outlined above, the Court finds that the Defendant has not met his burden of proving that the search and seizure of his laptop computer was unlawful. Accordingly, the Defendant's motion to suppress will be denied.

An appropriate order will follow.